**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

**FILED**

NOV 2 7 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| RIVER POINTE, LLC, and | ) | |
| SAGE LYONS, JR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: CV-01-PT-1712-M |
| | ) | |
| MARSHALL COUNTY, ALA., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**

NOV 2 7 2001

**MEMORANDUM OPINION**

This cause comes to be heard upon defendant Marshall County's Motion to Dismiss filed on August 16, 2001, which the court has converted into a Motion for Summary Judgment by order dated October 5, 2001.[1]

**FACTS[2]**

Plaintiff River Pointe, LLC ("River Pointe"), is an Alabama Limited Liability Company with its principal place of business in Madison County, Alabama. Plaintiff G. Sage Lyons, Jr. ("Lyons"), resides in Madison County, Alabama.

Defendant Marshall County, Alabama, is a body corporate. The Marshall County Commission ("Commission") is the governing body of Marshall County, Alabama. Billy Cannon ("Cannon") is the Chairman of the Commission. Mike Stewart ("Stewart") and Bill Greer ("Greer") are members of the Commission. Robert Pirando ("Pirando") is the County Engineer for Marshall County.

---

[1] In the complaint filed on July 10, 2001, plaintiffs named as defendants Marshall County, the Marshall County Commission, Billy Cannon, Mike Stewart, Bill Greer, and Robert Pirando. In the First Amendment to Plaintiffs' Complaint filed on October 29, 2001, plaintiffs dismissed all of these defendants except Marshall County. At the court's suggestion, the plaintiffs have otherwise "narrowed" the issues.

[2] When disputed, the facts are stated favorably to the plaintiffs.

42

River Pointe was the owner of real property developed as River Pointe Subdivision, situated outside the corporate limits of any municipality in Marshall County.  It continues to own real property within River Pointe Subdivision and adjacent to River Pointe Subdivision.  Lyons is the managing member of River Pointe and, with River Pointe, is the owner of real property adjoining River Pointe Drive, a road within River Pointe Subdivision.

River Pointe Subdivision is located northeast of Guntersville, Alabama, off Alabama Highway 227.  The subdivision includes approximately sixty-three acres and is served by two roads.  River Pointe Drive, which runs north and south, provides access to the subdivision from Alabama Highway 227.  The other road, Panorama Way, runs east and west through the subdivision and dead-ends in cul-de-sacs at both ends.  River Pointe Drive traverses a mountain up to its top where it intersects with Panorama Way.

In 1998, River Pointe employed registered surveyor Lynn Lavell Taylor to prepare the plat of the subdivision.  Taylor prepared the plat and a preliminary set of the drawings was given to Pirando.  At the request of Greer and Pirando, River Pointe made certain changes to the plat.  Specifically, the grade of one road was changed and the location of a cul-de-sac was changed.  After these changes were made, the final plat was submitted to Pirando.  The plat of River Pointe Subdivision displayed the following statement on its face:

"DEDICATION

"I/we, River Pointe LLC, as proprietor(s), have caused the land embraced in the within plat to be surveyed, laid out and platted to be known as River Pointe S/D, a part of Section 6&7, T8S, R4E in Marshall County, Alabama, and that the (roads, drive alleys, ect) as shown on said plat are herein dedicated to use of the public;

"Signed an sealed in the presence of:

2

"/s/ Robert Pirando       /s/ G. Sage Lyons, Jr.
Witness                  Property Owner"[3]

Prior to recommending the plat to the Commission for approval, Pirando went to River

Pointe Subdivision and inspected the proposed roads. Noting that the subdivision was located on

mountainous terrain, Pirando formed an opinion that to avoid the failure or deterioration of the

wearing or top surface of the roadway, an additional two-inch binder layer of asphalt needed to

be applied to the top of the chert base. Pirando also formed an opinion that the wearing layer of

asphalt, which is the traveled layer, should not be put down until the majority of the construction

of the homes in the subdivision had been completed. Finally, Pirando formed an opinion that a

grated drain at the entrance of the subdivision was necessary on River Pointe Drive to avoid

water coming down that road on the side of the mountain from running out into Alabama

Highway 227.[4]

Pirando attempted to contact Lyons to discuss these concerns. Unable to reach Lyons,

Pirando informed Ron Jackson ("Jackson"), the subdivision's paving contractor, that Marshall

County would not accept the River Pointe Subdivision roads unless the developer put down two

---

[3] According to Lyons, he executed the "Dedication" with the conclusory understanding that the approval of the plat by the Commission and its recording in the Office of the Probate Judge of Marshall County would render the roads in the subdivision public roads which would be *maintained* by the Commission. Lyons, in his affidavit, states that "River Pointe, L.L.C. would not have dedicated its property for use as public roads if it had been informed by the Marshall County Commission or County Engineer Pirando that, after dedication, the Marshall County Commission would not maintain the roads within River Pointe Subdivision." Lyons indicates in the affidavit that the roads had been completed as of May, 11, 1998. The suggestion that the plaintiffs would have simply left these completed roads without dedication defies belief. Presumably, since the streets were completed, if the lots were to be sold someone would have to maintain the streets. Further, presumably, the plaintiffs would not have simply abandoned a completed subdivision.

[4] Pirando's opinion was based on his experience addressing road deterioration at the Sandstone Estates and Spindletop Estates Subdivisions. These subdivisions involved mountainous terrain. The Commission agreed to accept maintenance of the roads shortly after the roadways were initially paved, but before construction of most of the houses in the subdivisions had begun. According to Pirando, the roads in both subdivisions began to deteriorate when construction traffic began to use the roads. Since the Commission had expressly committed to accepting the roadways, it had to spend Marshall County tax dollars and resources on repairing and maintaining the roads. It decided not to repeat this costly experience.

inches of additional asphalt, left the binder layer of asphalt without the wearing layer until the construction of the homes in the subdivision had been substantially completed, and placed a grated drain at the bottom of River Pointe Drive close to its intersection with Alabama Highway 227.  Pirando informed Jackson of these conditions prior to the construction of the roads.

In response, Jackson advised Pirando that River Pointe and Lyons refused to pay for the installation of a grated drain and refused to wait to install the wearing layer.  Based on these comments, Pirando recommended to the Commission that it not accept for maintenance the roadways in River Pointe Subdivision until the conditions were met.[5]

In April or May 1998, the plat was submitted to the Commission, for its approval.  "River Pointe Drive" was one of the roads shown on the plat.  The Commission scheduled consideration of the plat of the proposed subdivision for its meeting on May 11, 1998.  Pirando mailed a notice to Lyons, dated April 29, 1998, concerning the proposed subdivision stating that "[t]he developer anticipates that the final plat will be brought before the County Commission at its next regular meeting on Monday, May 11, 1998."

The Marshall County Subdivision Regulations ("Regulations") adopted by the Commission on October 11, 1978, state on the cover page:  "THE MARSHALL COUNTY COMMISSION WILL NOT ACCEPT THE ROADS AND STREETS FOR MAINTENANCE IN ANY SUB-DIVISION UNLESS THE SPECIFICATION [SIC] AS PRESCRIBED HEREIN ARE COMPLIED WITH."  In addition to this general proviso, Article 6 of the Regulations provides the following:

(B) MARSHALL COUNTY WILL NOT, AS A MATTER OF POLICY, CONSTRUCT ANY

---

[5]  While Jackson's statement that Lyons has refused to pay may be inadmissible hearsay if offered for the truth, it would not be inadmissible if offered to explain why Pirando recommended that the Commission not accept the roads for maintenance.  There may be even a question as to whether an announced "refusal" is an assertion of truth.  Furthermore, it should be noted that there is no evidence before this court disputing that Pirando discussed the conditions for acceptance of the roads with Jackson.

STREET, INSTALL ANY DRAINAGE PIPE OR STRUCTURES, DO ANY PAVING OR PATCHING OR DO ANY MAINTENANCE WORK IN ANY RECOGNIZED OR RECORDED SUBDIVISION OR DEVELOPMENT UNTIL THE SUBDIVISION OR DEVELOPMENT HAS BEEN DULY ACCEPTED BY THE COUNTY COMMISSION AS A PART OF THE COUNTY'S MAINTENANCE PROGRAM.

(C) THE MARSHALL COUNTY COMMISSION WILL CONSIDER ACCEPTANCE, UPON RECOMMENDATION OF THE COUNTY ENGINEER, AFTER CONSTRUCTION OF STREETS, ROADS, AND DRAINAGE IS COMPLETED, PROVIDED:

(1) THAT SAID STREETS, ROADS, AND DRAINAGE MEETS THE MINIMUM REQUIREMENTS AS SET OUT IN THESE REGULATIONS.

(2) THAT ALL NECESSARY IMPROVEMENTS AND UTILITIES HAVE BEEN COMPLETED.[6]

At the Commission meeting held on May 11, 1998, the Commission voted to accept the recommendation of Pirando and to "approve" the final plat of the subdivision. On May 11, 1998, Pirando executed a Certificate of Approval on the plat of River Pointe Subdivision. Lyons was in attendance at this meeting. At the time of the meeting, the roads in the subdivision had been completed and the plans submitted to the Commission were "as built" plans. Commissioner Greer made the motion to accept and approve the final plat. Commissioner Stewart seconded this motion. Chairman Cannon presided at the meeting. The minutes from the meeting state that "[t]he final plat complies with all subdivision rules and regulations, however, even though the final plat is being approved, the County is not accepting the roads within the subdivision for County maintenance at this time."[7] River Pointe was arguably not directly notified by the defendant prior to late in the year 2000 that the Commission had not accepted the

---

[6] These provisions appear to make a clear distinction between "approval" of a plat and "acceptance" of streets for maintenance. The Regulations assume that there is a "recognized or recorded" subdivision but still require "[due] acceptance" before undertaking maintenance.

[7] According to Marshall County, there are at least two other subdivision within Marshall County wherein the Commission has approved for recording the plats of the subdivisions without accepting maintenance of the subdivision roads. Those subdivisions are Woodland Meadows and Union Chapel Estates.

roads for county maintenance.[8]

The plat of the subdivision was recorded in the Office of the Probate Judge of Marshall County, Alabama, on May 11, 1998. The Commission did not require River Pointe to file and post a reasonable surety bond with the Commission to guarantee that the actual construction and installation of the public streets, public roads, drainage structures, and public utilities within the subdivision were in accordance with the approved plans. Public utilities have utilized the right-of-way for River Pointe Drive for the installation of utilities. Garbage is picked up from residents within the subdivision by means of River Pointe Drive. The house numbers within the subdivision have been assigned by the E-911 System of Marshall County. Additionally, the Commission has placed street name signs within the subdivision.

In the fall of the year 2000, residents of the subdivision began to complain about the pavement failures on the roads within the subdivision. The Commission refused and continues to refuse to maintain the roads within the subdivision. Pirando wrote and mailed a letter to the residents of the subdivision addressing their concerns. Pirando stated in the letter the following:

> As built plans for the subdivision were received and reviewed for compliance on April 28, 1998. The roads in the subdivision were paved on or about April or May 1998. The final plat for the subdivision was approved for recording during a regular session of the Marshall County Commission on May 11, 1998. To date, the roads in the subdivision have not been accepted for maintenance by the County.
>
> . . .
>
> A site visit was conducted by Marshall County Commissioner Bill Greer and myself on September 27, 2000.
>
> . . .

---

[8]  There may be a question of fact as to whether the plaintiffs were specifically notified of the lack of "acceptance." The regulations, however, make it clear that approval of the plat is not tantamount to "acceptance" for maintenance and that both are required before Marshall County has a duty to maintain.

> Since the County has not accepted either road as part of maintenance, the
> responsibility for corrective action is to be borne by the developer.

Copies of the letter were sent to Cannon, Greer, and paving contractor, Ron Jackson. Neither

River Pointe nor Lyons directly received a copy of this letter.

According to reports which appeared in *The Advertise-Gleam*, a newspaper published in

Marshall County, Alabama, Chairman Cannon stated that "the developers" were stalling on

making the repairs to River Pointe Drive.[9]  Commissioner Stewart stated in a Commission

meeting in April 2001, talking to residents of the subdivision and referring to people living on

other roads which had not been accepted for maintenance that "those people were misled, just

like you were misled by Sage Lyons."  Commissioner Greer publically stated in April 2001, that

Sage Lyons is solely responsible for fixing River Pointe Drive.  Pirando has also publically

stated that it was the developer's responsibility to repair River Pointe Drive and that the

Commission would not accept it for maintenance until four separate items were completed.[10]

The plaintiffs have expended monies to repair and maintain the roads within the

subdivision.  The plaintiffs have also been unable to sell the real property within and adjacent to

the subdivision.  The plaintiffs filed the present action on July 10, 2001.  In Count I, plaintiffs

alleged violations of the procedural due process clauses of both the federal and state

constitutions.  In Count II, plaintiffs alleged violations of their substantive due process rights as

guaranteed by the federal and state constitutions.  In Count III, plaintiffs alleged violations of

their right to equal protection of the laws as guaranteed by the federal and state constitutions.  In

---

[9]  Of course, such newspaper reports are not admissible.

[10]  An example of one such request is that Pirando informed Lyons that Lyons needed to install
underdrains to keep underground water from coming to the surface at River Pointe Drive.

Count IV, plaintiffs alleged that their property has been taken for public use without just compensation in violation of the provisions of the federal and state constitutions and the statutes of the State of Alabama. In Count V, plaintiffs alleged that an actual justiciable controversy exists concerning whether the roads in the subdivision are public roads and whether the Commission is required to exercise general superintendence of the roads.

On August 16, 2001, all defendants filed a Motion to Dismiss all federal claims as stated in Counts I, II, III, and IV, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. They moved that all state law claims be dismissed for failure to state a claim upon which relief can be granted. They also moved that the claim for declaratory judgment in Count V be dismissed under principles of comity and federalism. On August 31, 2001, the defendants then amended their Motion to Dismiss requesting that all federal claims be dismissed as barred by the statute of limitations and that all state law claims be dismissed as barred by the statute of limitations and the doctrine of laches. By order dated October 5, 2001, the court converted defendants' Motion to Dismiss into a Motion for Summary Judgment.

In an order dated October 9, 2001, the court directed the plaintiffs to succinctly list each federal and state claim which they still pursue. The court also directed the plaintiffs to specifically state what claims are maintained against what defendants. In response, plaintiffs filed a First Amendment to Plaintiffs' Complaint on October 29, 2001. The plaintiffs amended their complaint by dismissing as defendants the Commission, as such, Cannon, Stewart, Greer, and Pirando. The plaintiffs also dismissed all claims arising under the Constitution and laws of the State of Alabama. In addition, the plaintiffs dismissed the Federal Equal Protection Clause

8

claim and struck and deleted the factual allegations in paragraph twenty-nine of the complaint.[11]

The only remaining defendant is Marshall County (hereinafter "defendant").  The only claimed

violations now made against the defendant are: Count I, procedural due process; Count II,

substantive due process; and Count IV, taking without just compensation.  Count V seeks

declaratory judgment.

## ARGUMENTS

### *Due Process*

Defendant argues that summary judgment is appropriate as to plaintiffs' federal due

process claims because the claims fail to satisfy the requisite elements as a matter of law.

According to the defendant, a valid due process claim must contain two elements: (1) a

deprivation of a protected liberty or property interest, and (2) an absence of due process.  *See*

*Logan v. Zimmerman Brush Co.*, 455 U S. 422, 428 (1982).  Defendant claims that the first

element is not satisfied because the plaintiffs do not possess a property interest under Alabama

law with regard to a claim of road maintenance.  To support this proposition, defendant asserts

that the Alabama Supreme Court has established that "approval [of a subdivision plat] does not

amount to an acceptance of the roads as public roads."  *Baldwin County Comm'n v. Jones*, 344

So. 2d 1200, 1204 (Ala. 1977).  Defendant notes that the plaintiffs are not alleging that it took

their property in any way, but that their due process rights were violated because it did not

maintain their property.  According to the defendant, "[t]he Fourteenth Amendment's procedural

protection of property is a safeguard of the security of interests that a person *has already*

---

[11]   The plaintiffs alleged in paragraph twenty-nine that they had been treated by the defendant differently than the defendant had treated similarly situated developers in regard to approval of the plat and the maintenance of the roads.

9

*acquired* in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576

(1972) (emphasis added). Defendant claims that none of the due process rights alleged to be

violated by the defendant represent a "property interest" that plaintiffs had already acquired

under Alabama law.

Defendant further contends that the first element is not satisfied because the plaintiffs do

not possess a liberty interest under a purported "stigma-plus" claim. *See Logan*, 455 U.S. 422.

It notes that the alleged stigmatizing comments were made approximately three years after the

Commission approved the subdivision plat for filing with the Judge of Probate but refused to

accept the roads for county maintenance. Defendant asserts that the Eleventh Circuit has

established the law in this area: "We do not think the law of this Circuit has established that

defamation occurring other than in the course of dismissal from a job or in the termination or

significant alteration of some other legal right or status will suffice to constitute a deprivation

sufficient to state a claim under section 1983." *Von Stein v. Brescher*, 904 F.2d 572, 582 (1990).

Defendant argues that this standard has not been satisfied because the complaint does not allege

that defendant deprived either plaintiff "of a previously recognized property or liberty interest in

addition to damaging the plaintiff's reputation." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436

(11th Cir. 1998). Furthermore, defendant contends that the alleged defamation did not occur "in

the course of" a significant alteration of some legal right or status. According to the defendant, it

occurred three years after its refusal to maintain the road.

Finally, defendant argues that the second element is not satisfied because the plaintiffs

have failed to show that their state law remedies are inadequate. According to Marshall County,

the Eleventh Circuit has held that if a plaintiff has a remedy under state law to cure alleged

violations of due process, no procedural due process violation occurred. *See McKinney v. Pate*,

20 F.3d 1550, 1563-64 (1994) (en banc).  Thus, the plaintiffs must show that Alabama law does not provide them with an adequate post-deprivation remedy.  *See Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996).  Defendant asserts that this requirement has not been satisfied because the plaintiffs did not petition for a writ of mandamus in the Circuit Court of Marshall County, did not seek a declaratory judgment action in state court, and did not file a notice of claim with Marshall County.

In response, plaintiffs argue that the federal due process claims are not due to be dismissed because they possess a property interest under Alabama law, they do not have adequate post-deprivation remedies under state law, and because they have stated a denial of due process under the "stigma-plus" doctrine.  Turning to the first argument, plaintiffs contend that they have a property interest because once Pirando and the Commission approved the subdivision plat and the plat was filed in the Probate Office, the roads within the subdivision were dedicated to public use and become public roads.  At this point, plaintiffs claim, pursuant to *Ala. Code* § 23-1-80 (1975), the Commission has the responsibility of general superintendence over the public roads in the subdivision "so as to render travel over the same as safe and convenient as practicable."  *Id.  See also Macon County Comm'n v. Sanders*, 555 So. 2d 1054, 1057 (Ala. 1990).[12]  Plaintiffs state that the Alabama Supreme Court has held that "[t]he recording of a plat or map in substantial compliance with the requirements of these sections constitutes a valid dedication to the public of all public places designated in the plat or map. . . . A statutory dedication is deemed to convey title in fee simple to the governing body."

---

[12] Plaintiffs argue that the defendant's reliance on *Baldwin County Commission v. Jones*, 344 So. 2d 1200 (Ala. 1977), for the proposition that approval of a subdivision plat does not amount to acceptance of the roads as public roads is misplaced.  They note that in *Baldwin County*, the county commission did not approve the plat before it was recorded.  Consequently, they assert that any language in the opinion regarding whether the plat had been formally accepted would be pure *dicta*.

11

*Montabano v. City of Mountain Brook*, 653 So. 2d 947, 949 (1995) (internal citations omitted). In light of this opinion, plaintiffs claim that they have a property interest because the (1) subdivision plat carried on its face the dedication of the roads within the subdivision to the public; (2) the signed approval of the County Engineer for the recordation of the plat is on its face; (3) no limitation in regard to maintenance of the roads was included in the County Engineer's report; (4) the County Commission approved the plat in a regular meeting and noted that the plat "complies with all subdivision rules and regulations;" and (5) the plat was recorded in the Probate Office of Marshall County.[13]  Furthermore, plaintiffs contend that Pirando is now demanding specific expenditures of money by plaintiffs to maintain the roads and for drainage structures before the Commission will consider accepting the roads in subdivision for maintenance.  Given these facts, plaintiffs claim that they clearly possess a property interest under state law.[14]

Plaintiffs further contend that they have alleged a valid procedural due process claim because they do not have adequate post-deprivation remedies under state law.  Plaintiffs argue that the possibility of certain state created remedies does not, by itself, bar a federal action.  *See Messick v. Leavins*, 811 F.2d 1439, 1441 (11th Cir. 1987).  Although there may be some post-deprivation remedies available, plaintiffs argue these remedies do not provide for full compensation for their losses.  Plaintiffs cite *McKinney*, 20 F.3d at 1564 (finding that "as long as the remedy 'could have fully compensated the [employee] for the property loss he suffered,' . . .

---

[13]  Plaintiffs further contend that the Commission has no specifications, rules or regulations in regard to what must be done before a road in a subdivision is accepted for maintenance. See, however, Article 6, *supra*, which does require due acceptance.

[14]  Plaintiffs assert that *Henley v. Herring*, 779 F.2d 1553 (11th Cir. 1986), is a closely analogous case that mandates denial of the Motion for Summary Judgment. The court does not agree. *Henley* involved the vacation of a street as to which the plaintiffs had an entitlement to continued use.

12

the remedy satisfies procedural due process"). To illustrate, plaintiffs note that the defendant has raised certain immunity defenses against the state law claims. Plaintiffs contend that the application of those immunities renders potentially available state law remedies suspect and entirely inadequate.

Finally, plaintiffs argue that they have asserted a valid due process claim because they have stated a denial of due process under the "stigma plus" doctrine. According to the plaintiffs, the "stigma plus" doctrine provides a due process remedy where a plaintiff has been deprived of a liberty or property interest without due process of law and where defamatory statements were made. *See Nolen v. Jackson*, 102 F.3d 1187, 1190 (11th Cir. 1997). Plaintiffs claim that the deprivation of their property interest is continuing because the maintenance problems occurred in regard to the roads in the subdivision in late 2000 and the defendant was coercing the plaintiffs to maintain the roads. Further, they note that stigmatizing statements were made at the Commission meetings in early 2001 when homeowners in the subdivision were demanding that the roads be repaired. Plaintiffs contend that injuries caused by these actions to their business reputations and goodwill are actionable under the "stigma-plus" doctrine. *See Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) *and Von Stein v. Brescher*, 904 F.2d 572, 580 (11th Cir. 1990).

In reply, defendant points out that plaintiffs' argument that approval of a subdivision plat for recording purposes ipso facto creates a property interest fails as a matter of law. Defendant contends that a decision to allow a subdivision developer to record a plat is a decision wholly distinct and separate from the decision to accept the roads in the subdivision for public maintenance. It explains that under *Ala. Code* § 11-3-10(1975), the Commission, in its discretion, possesses the power to accept a road as part of the county system. It notes that this

code section has been interpreted by an Attorney General of the State of Alabama to give county commissions the "power to determine which roads shall be accepted as 'public roads.'" *See Opinion of Attorney Gen. to the Hon. Sid Holcomb*, 210 Ala. Op. Atty. Gen. 27, 1988 WL 247847 (Ala. A.G. Feb. 11, 1988). Defendant also claims that plaintiffs "cannot overcome the straightforward conclusion" of the Alabama Supreme Court that "approval [of a subdivision plat] does not amount to an acceptance of the roads as public roads." *Baldwin County*, 344 So. 2d at 1204. Defendant further contends that plaintiffs are not aided by their reliance on *Montabano* and *Blair v. Fullmer*, 583 So. 2d 1307 (Ala. 1991). According to the defendant, *Montabano* only addresses a city park dedication and nowhere discusses roads or a municipality's duty to maintain roads. It also claims that the *Blair* opinion actually supports its position because it maintains that "[i]t is certainly the case that a city or county must accept such a dedication (perhaps by the general public's use of the roads) before there arises a duty on the governing body to maintain the roads. . . ." 583 So. 2d at 1311.

Defendant further argues that defamation alone does not state a stigma-plus claim and that the defamatory statements must occur during the course of a significant alteration of some legal right or status. According to the defendant, the defamatory statements it allegedly made occurred three years after the Commission's refusal to accept the roads. It argues that statements made three years after this refusal cannot as a matter of law be made "in the course of" a termination or alteration of legal right or status. *See Von Stein*, 904 F.2d at 582.

Finally, defendant replies that the plaintiffs have failed, as a matter of law, to show that state law remedies are inadequate. Defendant claims that the Eleventh Circuit has rejected the argument that viability of state law defenses and immunities make state law remedies inadequate for purposes of procedural due process arguments. *See Rittenhouse v. DeKalb County*, 764 F.2d

14

1451, 1458-59 (1985) (dismissing procedural due process claims against public official and county despite the fact that each enjoyed immunity from suit).  Additionally, defendant argues that the plaintiffs' decision, as a matter of litigation strategy, to not file a notice of claim does not make their state law remedies inadequate for purposes of procedural due process.

Defendant also argues that summary judgment is appropriate as to plaintiffs' federal substantive due process claim because it did not violate a fundamental right of either plaintiff.  Relying on *McKinney v. Pate*, defendant claims that the Eleventh Circuit has recognized that the substantive component of due process concerns rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." 20 F.3d at 1556.  According to the defendant, the Supreme Court has provided that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).  It further contends that substantive due process protects only rights created by the Constitution. *See McKinney*, 20 F.3d at 1556.

In response, the plaintiffs argue that the Eleventh Circuit has recognized that a landowner's vested rights created by state law may constitute property subject to arbitrary and capricious substantive due process protections under the Federal Constitution. *See Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 614 (1997).  Plaintiffs contend that a substantive due process claim does exist for arbitrary and capricious conduct. *See APT Tampa/Orlando, Inc. v. Orange County*, No. 97-891-CIV-ORL-22, 1997 U.S. Dist. LEXIS 22096 (M.D. Fla. Dec. 10, 1997).  They note that they have alleged that the defendant's continuing actions of not accepting the roads, maintaining the roads, and insisting that plaintiffs must maintain the roads after they have been dedicated to the public and accepted by Marshall County was and is arbitrary and

15

capricious.

Defendant replies that plaintiffs' reliance on *Villas of Lake Jackson* is misplaced for two reasons. First, it argues that the authority cited by the Eleventh Circuit in *Villas of Lake Jackson* to support its statement that a landowner's vested rights created by state law may constitute property subject to arbitrary and capricious substantive due process protections was decided prior to the Eleventh Circuit's en banc ruling in *McKinney*. In *McKinney*, the Eleventh Circuit stated that "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" 20 F.3d at 1556. Thus, defendant argues that, even assuming plaintiffs possess a state-created property right, such a right would not be subject to substantive due process protection because it is not a fundamental right created by the Constitution. Second, defendant notes that the Eleventh Circuit assumed in *Villas of Lake Jackson* that the trial court was correct in "classifying the down-zoning as a legislative rather than executive act . . . ." 121 F.3d at 614. It contends that the Eleventh Circuit has recognized a distinction between legislative and executive acts for purposes of determining substantive due process rights. It argues that the Eleventh Circuit has recognized that it "held en banc that a plaintiff did not present a substantive due process claim when he alleged an executive deprivation of a state-created right." *DeKalb Stone Inc. v. County of DeKalb*, 106 F.3d 956, 960 (1997) (discussing *McKinney v. Pate*). According to the defendant, the plaintiffs have admitted that "[n]one of the actions taken by defendants as alleged in the complaint were in a legislative capacity." *See* Plaintiffs' Memorandum Brief in Opposition to Defendants' Motion to Dismiss at p. 14. Consequently, defendant claims that allegations of executive acts depriving plaintiffs' of state-created rights are not sufficient to state a claim for substantive due process.

16

### *Fifth Amendment Takings Claim*

Defendant argues that summary judgment is appropriate as to plaintiffs' Fifth Amendment takings claim for two reasons. First, it contends that the claim is not "ripe" for review. According to the defendant, the Supreme Court has ruled that a Fifth Amendment takings claim is not ripe unless the plaintiff (1) obtains a final decision regarding the application of a particular ordinance or regulation to his property and (2) seeks just compensation through available state procedures. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). It notes that the Eleventh Circuit has established a rule that plaintiffs seeking to assert takings claims must allege that the state does not provide a process for obtaining just compensation or that the process provided is inadequate. *See Agripost, Inc. v. Miami-Dade County, ex rel. Manager*, 195 F.3d 1225, 1233-34 (11th Cir. 1999). The defendant concludes that the takings claim is not ripe because the plaintiffs have failed to plead that Alabama either does not provide a process for obtaining just compensation or that the process is insufficient.[15] Second, defendant asserts that the plaintiffs have failed to allege a taking of property for purposes of a Fifth Amendment application. It explains that the "Fifth Amendment forbids the taking of private property for public use without just compensation." *Palazzolo v. Rhode Island*, ___ U.S. ___, 121 S. Ct. 2448, 2466 (2001) (O'Connor, J., concurring). Defendant argues that it has taken nothing that the plaintiffs owned and then converted it to public use. Consequently, it claims that the plaintiffs have failed to allege a Fifth Amendment takings claim.

---

[15] Defendant also points out that plaintiffs could have sought administrative review from the Commission by presentation of a notice of claim. It contends that their failure to do so within the one year statue of limitations is not the equivalent of showing "futility." *See Strickland v. Alderman*, 74 F.3d 260, 265 (11th Cir. 1996) (holding that "futility" exception would not apply where plaintiff failed to submit application for relief).

In response, plaintiffs argue that there was and continues to be a taking of their property for public use without just compensation because they dedicated their property for use as public roads with the understanding that upon acceptance of the proffered dedication by Marshall County, Marshall County would fulfill its statutory duty to maintain the roads. They contend that Commission has unilaterally accepted fee simple title to the roads and has placed upon the plaintiffs the responsibility to maintain the roads in the subdivision. As to the first prong of the ripeness test set forth in *Williamson County*, plaintiffs argue that the "futility doctrine" applies to the facts of this case. *See Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1516 (11th Cir. 1987). Plaintiffs assert that they need not pursue "futile acts" in order to render their claims ripe for adjudication. They contend that the futility of any act is evident by the Commission's refusal to maintain the roads, the Pirando letter of October 31, 2000, and the public comments made by Cannon, Stewart, Greer, and Pirando, as alleged in the complaint. Turning to the second prong, plaintiffs claim that the Eleventh Circuit has recognized that a plaintiff may seek actual damages for a due process violation caused by a regulation that "goes to far," which might provide, "where authorized and appropriate," a theory of recovery alternative to just compensation recoverable pursuant to a claim for inverse condemnation. *See Corn*, 816 F.2d at 1516. They claim that there is no state law remedy to obtain actual damages caused by the action of the Commission in going "to far" in its "standardless" refusal to accept for maintenance the roads in the subdivision after their dedication.

### *Statute of Limitations*

Defendant argues that all federal claims raised by the plaintiffs are barred by the applicable statute of limitations. It is defendant's position that all federal claims alleged arose out of the Commission's decision, on May 11, 1998, to approve the plat of the subdivision

18

without accepting the roads in the subdivision for maintenance.  It contends that the statute of

limitations bars these claims because the complaint was filed July 10, 2001, over three years

later.  It notes that the statute of limitations for claims brought under 42 U.S.C. § 1983 is two

years.  *See Owens v. Okure*, 488 U.S. 235, 246 n.9 (1989) (holding that state residual statute of

limitations applies and noting that *Ala. Code* § 6-2-38(1) applies); *see Ala. Code* § 6-2-38(1)

(1975) (stating that statute of limitations is two years).

     In response, plaintiffs assert that the federal law claims are not based upon one decision

of the defendant on May 11, 1998.  They note that their complaint repeatedly alleges the

continuing nature of the defendant's actions.[16]  They argue that the Eleventh Circuit and the

Supreme Court have recognized the theory of continuous tort in regard to when a cause of action

accrues for the purpose of determining whether the statute of limitations has run.  They contend

that the tort is continuous because the taking is not complete because the defendant continues to

insist that the plaintiffs must maintain the public roads within the subdivision.  *See McClendon v.*

*City of Boaz*, 395 So. 2d 21 (Ala. 1981) *and Tucker v. Southern Wood Piedmont Co.*, 28 F.3d

1089 (11th Cir. 1994).

     Defendant replies that plaintiffs' "continuing tort" theory is without merit and that the

statute of limitations began to run on May 11, 1998, when the Commission refused to accept the

roads.  It argues that a federal civil right claim accrues when facts supporting the claim are

apparent or should be apparent to a person with reasonably prudent regard to his rights.  *See*

*Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996).  It explains that the statute of limitations

begins to run at first injury, however slight, even though the injury may later become greater.

---

[16]  Plaintiffs cite this court to paragraphs 16, 22, 24, 25, and 27 of the complaint to demonstrate the
allegations of the continuing nature of the defendant's actions.

*See Free v. Granger*, 887 F.2d 1552, 1555 (11th Cir. 1989).  Defendant contends that the *Rozar* case is analogous to this case.  According to the defendant, the Eleventh Circuit held that a vote by a county commission to site a landfill in a neighborhood was the operative decision amounting to the alleged discrimination and that the statute of limitations began to run from the date of the commission's vote at a public meeting, rather than the later date when the county actually acquired ownership of the landfill property.  *Rozar*, 85 F.3d at 563.  Relying on *Rozar*, defendant claims that the allegedly unconstitutional acts complained of by the plaintiffs occurred at the meeting on May 11, 1998, when the Commission voted to approve the plat but not accept the roads for county maintenance.  Thus, it concludes that the two-year statue of limitations had expired when the plaintiffs filed the complaint on July 10, 2001.[17]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of explaining the basis of his motion.  *Id.*  The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324.  "When deciding whether summary judgment is appropriate, all evidence and

---

[17] Defendant also argues that the Alabama Supreme Court has specifically rejected the so-called "discovery rule" such that the applicable statute of limitations is not tolled until the plaintiff "discovers" his injury. *See Ramey v. Guyton*, 394 So. 2d 2, 5 (Ala. 1980).  Therefore, defendant contends that the statute of limitations began to run when the Commission formally acted on May 11, 1998, even though plaintiffs allege they were unaware of their injury until late in 2000.

20

reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## ANALYSIS

In a phone conference conducted on November 19, 2001, the parties acknowledged that the primary legal issues are the following: (1) whether the defendant's "approval" of the plat was tantamount to its "acceptance" of the streets for maintenance; (2) whether there is an adequate remedy under state law for any alleged wrongs of the defendant; (3) whether the statute of limitations began to accrue when the plaintiffs knew or should have known either (a) that the defendant had specifically determined not to accept the streets for maintenance or (b) knew or should have known that the defendant, in any event, had not taken any affirmative action to accept the streets for maintenance; and (4) whether the Eleventh Circuit Court of Appeals recognizes a substantive due process claim under the circumstances of this case in view of the holdings of *McKinney v. Pate*, 20 F.3d 1550 (1994); *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956 (1997); and *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610 (1997). Further, at this conference, the defendant agreed that for the purposes of considering this motion, the court could assume, notwithstanding the minutes entry, that no formal action was taken at the May 1998 meeting regarding acceptance of the streets for maintenance. In view of this concession, the court concludes that no discovery at this stage is required. There is no evidence, however, that the defendant *did* affirmatively accept the streets for maintenance.

As this court addresses the issues in this case, it initially has to ponder at least two

21

hypothetical questions. First, if the plaintiffs prevail, will it mean that every person regardless of race, gender, etc., who lives along a street which has clearly been dedicated to the public and clearly accepted by a county or municipality for maintenance have one or more federal claims against a municipality or county which refuses to repair potholes or otherwise maintain the street? Second, if the plaintiffs prevail, will subdivision developers be able to improperly construct streets within the subdivision and, anytime thereafter, require the street to be properly constructed by counties or municipalities as "maintenance?" These two questions would appear to be less pertinent here where, the defendant has clearly declared through Regulations that the approval of the plat was not tantamount to acceptance of the street(s) for maintenance and Alabama case law so holds.

While the plaintiffs have somewhat "narrowed" the issues, there are still some claims which so obviously lack merit that the court need only give them brief consideration.[18] The court begins with the recognition that the plaintiff Lyons lacks standing with regard to all of the purported remaining claims. All of the claims relate to alleged constitutional violations which are said to have arisen out of matters relating to the approval of the plat and the refusal of the defendant, after said approval, to maintain the streets. The plaintiff Lyons, as an individual, was not an entity which submitted the plat for approval. There could be no due process or takings claims involving him. As will be further indicated, there are no takings or due process claims as to either party, but plaintiff Lyons has no standing to even raise any claims. Apparently he was an agent and member of the subdivision owner and an owner of lot(s) in the subdivision, but not the owner of the subdivision which submitted the plat. Notwithstanding this court's conclusion

---

[18] This case started out in a fashion that could serve as a clinic with regard to the Eleventh Circuit's admonition against shotgun pleading. *See Byrne v. Nezhat*, 261 F.3d 1075, 1128-30 (11th Cir. 2001).

that plaintiff Lyons lacks standing, it will address the merits as if both plaintiffs have standing.

### *Fifth Amendment Takings Claim*

There is no reasonable allegation that any of the property of the plaintiffs has been "taken" by the defendant. The court simply refers to *Charles J. Arndt, Inc. v. City of Birmingham*, 748 F.2d 1486, 1490-93 (11th Cir. 1984), for further analysis. Also see *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 n.4 (11th Cir. 1997) ("This is not a taking case, however, because Appellant never [offered substantial evidence] that it was deprived of all economic use of its property interest."). Also see *Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275 (4th Cir. 1998).[19]

### *Due Process*

For reasons argued by the defendant as discussed above, this court also concludes that the plaintiffs have not alleged nor offered proof of a due process claim. *See Charles J. Arndt*, 748 F.2d at 1493-94. The plaintiffs had no reasonable expectation that the defendant had or would "accept" the streets for maintenance unless, separately from the "approval" of the plat, the defendant so determined and declared. The quoted Article 6 of the Regulations makes it plain that there are two separate considerations. Plaintiffs were on notice by the Regulations that approval and acceptance are different concerns. *See Baldwin County Comm'n v Jones*, 344 So. 2d at 1204. *See also Tuxedo Homes v. Green*, 63 So. 2d 812 (Ala. 1953) *and Blair v. Fulmer*, 583 So. 2d 1307 (Ala. 1991).

In the November 19, 2001 recorded conference, the defendant cited *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), and *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956 (11th

---

[19] During the November 19, 2001 conference, the plaintiffs referred to a "half taking."

Cir. 1997), for the proposition that the plaintiffs can not maintain a substantive due process claim. The plaintiffs countered this argument by citing *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610 (11th Cir. 1997). Of course, both *McKinney* and *DeKalb Stone* predate *Villas of Lake Jackson* and can not be overruled by *Villas of Lake Jackson*. Further, *Villas of Lake Jackson* involves the legislative adoption of ordinances rather than executive action and the district court holding that the legislative action was not arbitrary and capricious was affirmed. This court concludes that the executive action of the defendant was not arbitrary and capricious and that the holdings of *McKinney* and *DeKalb Stone*, along with other cases cited above, defeat the plaintiffs' claims of denial of substantive due process. In *DeKalb Stone*, the court stated, "This Court held en banc that a plaintiff did not present a substantive due process claim when he alleged an executive deprivation of a state-created right." 106 F.3d at 960 (citing McKinney, 20 F.3d at 1556).

The plaintiffs conflate *their* dedication of the streets with defendant's purported acceptance of the streets for maintenance. This court acknowledges that the streets were dedicated to the public. There is no evidence, however, that the defendant accepted them for maintenance. The quoted Regulations make it plain that the defendant "will consider acceptance upon recommendation of the county engineer . . . ." The decision of Marshall County to require proper construction of the streets before accepting them for maintenance was certainly not arbitrary or capricious. Further, the decision was rational and does not shock the conscience. What occurred with the streets within a short time of construction suggests that the decision was not only rational and reasonable, but prophetic.

Plaintiffs have not shown any property interest by merely suggesting a purported failure of the defendant to abide by an obligation allegedly created by state law. *Compare Braden v.*

24

*Tex. A & M Univ. Sys.*, 636 F.2d 90 (5th Cir. Unit A Feb. 1981); *Costello v. Town of Fairfield*, 811 F.2d 782 (2d Cir. 1987); *and Jimenez v. Almodovar*, 650 F.2d 363 (1st Cir. 1981). The plaintiffs do not allege that the defendant has not repaired its streets because of some suspect classification or because they had engaged in some constitutionally protected activity. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property"). The existence of a property interest is determined by reference to state law. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976). Plaintiffs have not cited any Alabama cases suggesting such a property interest here. At best, the plaintiffs allege a purported defaulted obligation. This court doubts that such an obligation exists under state law. In any event, there is no constitutional deprivation.[20]

The plaintiffs further attempt to stretch federal constitutional law by alleging a liberty interest violation based upon alleged stigmatizing statements by three county commissioners and one county engineer. It is not alleged that any such statement was made by the Commission as a body at the time it took any formal action related to the plaintiffs' property. There is no reasonable allegation that the defendant has "foreclosed [plaintiffs'] freedom to take advantage of other [property development] opportunities" where the streets are properly constructed. *Roth*, 408 U.S. at 573. *See Vaughn v. Shannon*, 758 F.2d 1535 (11th Cir. 1985). As indicated, plaintiff Lyons has no standing to bring any claims. To the extent that he, personally, is alleged to have been defamed, he could not have been defamed in connection with his plat or his subdivision. He does not have standing to raise a due process claim and thus cannot assert a liberty interest.

---

[20] See discussion hereinafter with reference to "Other Authorities."

It is doubtful that the alleged statements would constitute defamation even under state law. The plaintiffs were claiming that the defendant was responsible for maintaining the streets. The Marshall County spokesmen were, in essence, merely disagreeing and stating that the responsibility was that of the plaintiffs. In any event, the alleged stigmatizing comments were not made during the course of the May 1998 proceedings; nor were they related to an alleged due process violation decision of the defendant not to accept the streets for maintenance. There has been no liberty interest violation.

Since there was no property interest relating to the plaintiffs' claims and no liberty interest, plaintiffs can maintain neither a procedural or substantive due process claim. In any event, the substantial evidence is that the plaintiffs had notice of the May 1998 meeting and knew or should have known or could have ascertained on reasonable inquiry that the streets were not accepted for maintenance.[21] The plaintiffs attempt to state federal claims inconsistent with the concept that "the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983). There has been no deprivation of a right or interest protected by the Constitution. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).

### *Statute of Limitations*

Although it is not necessary for this court to decide the limitations of action issue, the court will partially address it but not totally reach it. Obviously, the pertinent statute is the

---

[21] In addition, plaintiffs were on notice of the distinction contained in the Regulations between approval of a plat and acceptance of roads for County maintenance. Plaintiff Lyons has stated that he was aware of the Regulations. Further, Taylor, plaintiffs' registered surveyor, has stated that he was "familiar with the procedures in regard to the approval of subdivision plats within the unincorporated areas of Marshall County, Alabama which were in effect in 1998." As previously stated, the Regulations clearly provide that approval and acceptance are different concerns.

Alabama two-year statute. Further, it is clear that this action was filed more than two years after

May 1998. If there was any due process denial, it likely took place in May 1998. Further, it is

likely that the plaintiffs should have known, under the Regulations, that approval of the plat was

not tantamount to acceptance of the streets for maintenance. As indicated, the Regulations state

that the defendant "will consider acceptance upon recommendation of the county engineer . . . ."

There is no evidence that the county engineer made such a recommendation or that the plaintiffs

pursued it. The plaintiffs could have likely determined, on reasonable inquiry, whether there had

been such acceptance. The court does not reach the issue of whether the "takings" claim and/or

the due process claims are time barred. As stated, however, these claims lack merit. *See*

*generally Rozar*, 85 F.3d at 561-62. Also compare *Del. State College v. Ricks*, 449 U.S. 250

(1980).

### *Declaratory Judgment*

The court does not have separate subject matter jurisdiction of the declaratory judgment

claim. The Federal Declaratory Judgment Act does not create subject matter jurisdiction. *See*

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) ("'(T)he operation of the

Declaratory Judgment Act is procedural only.' Congress enlarged the range of remedies

available in the federal courts but did not extend their jurisdiction."). The only basis for the

court to consider such a claim would be as a supplemental claim. Further, the court has

discretion as to whether to decide a declaratory judgment action. *See Commercial Metals Co. v.*

*Balfour, Guthrie, & Co.*, 577 F.2d 264, 266 (5th Cir. 1978) ("In its memorandum opinion, the

District Court correctly noted that the Declaratory Judgment Act grants to trial courts a measure

of discretion in determining whether or not to entertain a suit for declaratory relief even though

jurisdiction is present."). In its discretion, the court declines to decide this purely state law issue.

27

Further, since the court is granting defendant's motion for summary judgment as to all federal claims, it elects not to consider the supplemental claim. It will be dismissed without prejudice.

### Other Authorities

As indicated, plaintiffs' federal claims are tenuous. This court can provide no better analysis than that of Judge Ervin in *Front Royal and Warren County Industrial Park Corporation v. Town of Front Royal*, 135 F.3d 275 (4th Cir. 1998). The case is highly analogous in that it involves allegations of failure to provide service to a subdivision. Further, it involves a case wherein the state courts granted a writ of mandamus under Virginia law, but there was no available money damages remedy. Such a mandamus remedy would likely be available in Alabama in an appropriate case.[22]

For other pertinent cases which reject similar attempts to stretch federal law, see *Kaplan v. Clear Lake City Water Authority*, 794 F.2d 1059 (5th Cir. 1986); *Iowa Coal Mining Company, Inc., v. Monroe County*, 257 F.3d 846 (8th Cir. 2001); *Hyde Park Company v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000); *Crider v. Board of County Commissioners*, 246 F.3d 1285 (10th Cir. 2001); *Estate of Himelstein v. City of Fort Wayne*, 898 F.2d 573 (7th Cir. 1990); and *Choate's Air Conditioning & Heating, Inc. v. Light, Gas and Water Division*, No. 00-5399, 2001 WL 856957 (6th Cir. June 22, 2001).

### Appropriateness of Abstention or Certification

This court has considered the possibility of abstaining as was initially done in *Front Royal*, or certifying questions to the Supreme Court of Alabama. However, rather than, as stated

---

[22] The plaintiffs have acknowledged that they could likely pursue a mandamus remedy in state court. Further, the plaintiffs' initial complaint sought other state law remedies which they have now abandoned. Presumably these claims were not just made frivolously .

in *Front Royal*, "pass[ing] through procedural purgatory . . . to procedural hell," 135 F.3d at 284,

this court will follow the ultimate federal holdings of *Front Royal* which were rendered after

state court proceedings had concluded following abstention.

> Significant language in *Front Royal* as it pertains to this case includes the following:

> However, under this jurisprudence we can see absolutely no warrant for the
> proposition that where the government does not affirmatively prohibit the
> realization of investment-backed expectations, but merely refuses to enhance the
> value of real property, a compensable taking has occurred. We must seriously
> question the nature of IPC's claimed property interest that has allegedly been
> taken. This property interest is nothing but an inchoate interest in the conferral of
> a benefit to enhance market value. To find it to be a compensable taking would
> open an incredible Pandora's box. Even were such an inchoate interest a stick in
> the bundle of property rights, it is clearly not one of the classical property rights
> of possession, use, and disposition.[23]

> . . . .

> Not all regulatory deprivations amount to regulatory takings, and a regulatory
> deprivation that causes land to have "less value" does not necessarily make it
> "valueless."

> . . . .

> As the state circuit court held under Virginia law, and as IPC even argued before
> it, because there is "no constitutional right to sewer service," the Town's "failure
> to confer a benefit on the property which [IPC] alleges would substantially
> enhance the value of its property" cannot be a taking.

> . . . .

> As unfortunate as the appellants' behavior has been, however, it simply does not
> constitute a taking under federal constitutional law.

> . . . .

> Because IPC's property interest is at best an inchoate interest in the conferral of a
> benefit to enhance market value, and not like one of the traditional sticks in the
> bundle of property rights, we will not open the lid to Pandora's Box into a virtual

---

[23] Both substantive and procedural due process claims must be based upon a protected property interest.

*terra incognito* where we cannot stand on something more like *terra firma*.

. . . .

      However it may be that the Town lacked discretion, that IPC had a claim of entitlement, and that the Town deprived IPC of that entitlement, it is equally plain that the Virginia Supreme Court remedied that deprivation by affirming the trial court's issuance of a writ of mandamus. Pursuant to that writ, the sewer lines were constructed. Thus even if IPC has satisfied the first two elements of its substantive due process claim, it cannot satisfy the third. Because the state courts ordered the Town to construct the sewer lines, the state courts were capable of rectifying, and did rectify, the Town's dereliction.

. . . .

But governmental actions that are violative of state law are properly challenged in state courts which exist, in part, to protect citizens from abuses of state law. Whether the Town illegally refused to comply with the Annexation Court's decree is not determinative of whether federal substantive due process has been violated. As we stated in *Love*:

> We would trivialize the Due Process Clause to invoke it every time the citizen defeats the state in state court. The Clause is violated only where the state courts can do nothing to rectify the injury that the state has already arbitrarily inflicted.

Had IPC not rushed into federal court in the first place but instead gone to state court, as it only did after we ordered it to following our abstention decision in *Front Royal V*, no doubt its sewer lines would have been constructed much sooner. Federal court is not the automatic cure for whatever ails one.

*Front Royal*, 135 F.3d at 285-89 (internal citations omitted).

      As did the court in *Front Royal*, this court concludes that, since there is no protected property interest, there can be no takings claim or due process violation, substantive or procedural. Further, there was clearly some state remedy available which was not pursued.

**SUMMARY**

The court will dismiss plaintiffs' procedural and substantive due process claims and their takings claim and any other federal claims with prejudice.  The court will dismiss the claim for declaratory judgment and other state law claims without prejudice.

This _____ day of November 2001.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

31